**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **C. ERIC STIERS,** : | |
| : | |
| **Plaintiff,** : | |
| : | Case No. 07-145 |
| v. : | JUDGE ALGENON L. MARBLEY |
| : | Magistrate Judge Mark L. Abel |
| **AK STEEL BENEFITS PLANS** : | |
| **ADMINISTRATIVE COMMITTEE,** : | |
| : | |
| **Defendant.** : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter comes before the Court on Plaintiff C. Eric Stiers' ("Stiers" or "Plaintiff") and Defendant AK Steel Benefits Plans Administrative Committee's ("BPAC" or "Defendant") motions for judgment on the administrative record. Pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), Stiers claims entitlement to long term disability ("LTD") benefits from the Long Term Disability Plan ("the Plan") established by his employer, the AK Steel Corporation ("AK Steel"). Stiers asks this Court for prejudgment interest on past benefits wrongly denied, attorney's fees, costs, and to instate LTD benefits under the Plan. Defendant cross-motions for judgment on the administrative record. For the reasons set forth below, Plaintiff's motion for judgment on the administrative record is **DENIED**. Defendant's cross-motion for judgment on the administrative record is **GRANTED**. This case is **REMANDED** to the plan administrator for an appellate review of Plaintiff's application for LTD benefits, in accordance with the processes required by Department of Labor regulation 29 C.F.R. § 2560.503-1(h)(4).

**II. BACKGROUND**

### A. Facts

AK Steel is a steel manufacturing and processing company. Stiers was an employee of AK Steel for twenty-seven years, and was forty-five years old when he last worked for the company. Stiers left work on March 14, 2005, and subsequently applied for LTD benefits on March 5, 2006. On August 4, 2006, Defendant notified Stiers that his application for LTD benefits was denied based upon the determination of Richard H. Clary, M.D., that his condition was not work prohibitive. On December 14, 2006, Stiers appealed Defendant's denial of LTD benefits, and the BPAC Committee upheld its denial of LTD Benefits on January 4, 2007, stating that Stiers' appeal did not provide any additional "diagnosis differing from those originally presented in the opinion of Dr. Clary."

### 1. The Plan

AK Steel provides short term sickness and accident benefits ("S&A benefits") and LTD benefits to eligible hourly employees. While employed at AK Steel, Stiers was covered by the policy plan governing this litigation. In relevant part, the Plan provides that an employee is eligible for LTD benefits if he meets the following condition:

> "You are totally and permanently disabled as certified by a physician approved by the Benefit Plans Administrative Committee."

Defendant ultimately denied Stiers benefits by finding that he was unable to meet the condition above.

### 2. The Medical Records

On March 14, 2005, Stiers left work and went to the emergency room complaining of chest pain and numbness. The following day, Stiers saw his general practitioner, Dr. Wallin,

who opined that Stiers was suffering from non-epileptic tremors.

On March 18, 2005, Stiers began seeing Dr. Mukesh Rangwani, a general psychiatrist. Dr. Rangwani opined that Stiers was suffering from an "adjustment disorder with mixed emotional features," and prescribed Xanax, Paxil, and one month off of work. Stiers saw Brenda Blake, a licensed professional clinical counselor, in Dr. Rangwani's office on April 19, 2005, and she observed Stiers to be suffering tremors and slurred speech.

The following day, Stiers was admitted to Riverside Methodist Hospital, where he stayed for four days. The doctors at Riverside found no physical explanations for Stiers' reported symptoms, but Dr. Watson, a neuro-specialist assessed that Stiers was suffering from "probable conversion disorder."[1] Stiers was released with a recommendation to continue counseling.

In May 2005, Stiers began seeing a new primary care physician, Dr. Luft. Dr. Luft diagnosed Stiers with pseudo-seizures and referred him to the Dr. Giroux at the movement disorders outpatient services department of the Cleveland Clinic. After a physical and neurological examination, Dr. Giroux found normal neurological results, and stated that the findings were consistent with pseudo-seizures or conversion syndrome.

### 3. Defendant's Review of Stiers' Claim

As of July 2005, Stiers had not returned to work and continued to collect S&A benefits. In August, the company's medical director, Dr. John Rutan, requested that Stiers submit to an independent psychological examination by Dr. David J. Greenwald, a clinical psychologist. Dr.

---

[1] Conversion disorder is the presence of symptoms or deficits affecting the voluntary motor or sensory function that suggest a neurological condition, but where no neurological explanation can be found. *Diagnostic and Statistical Manual of Mental Disorders*, Amer. Psych. Assoc., 4th ed., p. 494, 2000.

Greenwald administered a MMPI-2 test, watched surveillance videos of Stiers participating in everyday activities, and conducted a two and a half hour face-to-face evaluation of Stiers.  Dr. Greenwald found the results of the MMPI-2 test to be of marginal validity, but still statistically significant and interpretable.  His conclusion from the test results was that Stiers was likely magnifying or fabricating his symptoms.  In his final assessment, Dr. Greenwald stated:

> "In my opinion, the claimant is not permanently or temporarily disabled from his job at AK Steel, and I would place no restrictions upon his return to work.  In my opinion, he is psychologically capable of returning to the job of crane leader, without restrictions."

On March 5, 2006, Stiers met with Dr. Rangwani and said that he would like to return to work.  Dr. Rangwani released Stiers to return to light duty work during the day shift.  But, instead of returning to work, Stiers applied for LTD benefits the next day.

Dr. Rutan was in charge of determining eligibility for LTD benefits at AK Steel, and he arranged to have Stiers evaluated by an independent board certified psychiatrist, Dr. Richard H. Clary.  On June 2, 2006, Dr. Clary interviewed Stiers for ninety minutes, viewed the surveillance tapes, and reviewed all of his available medical records.  Three days later, Dr. Clary wrote a medical report on Stiers, stating that:  "In my medical opinion, Mr. Stiers is exaggerating his symptoms to appear disabled.  In my medical opinion, his psychiatric condition is not work prohibitive and does not cause disability."  Dr. Clary did note that the DSM IV exam he administered to Stiers did not indicate that the symptoms were intentionally produced, but Dr. Clary still reached the medical opinion that Stiers was not disabled.  Based on Dr. Clary's findings, Dr. Rutan determined that Stiers did not meet the Plan's criteria for LTD benefits, and a denial letter was sent to Stiers on August 4, 2006.

### 4.  Stiers' Appeal of the Adverse LTD Benefit Determination

On December 14, 2006, Stiers appealed Defendant's denial of LTD benefits.  Along with his appeal letter, Stiers provided a report from Dr. Lee Roach, a psychologist, as well as additional records from his family practitioner, Dr. Luft.  Dr. Roach conducted a series of tests and concluded that Stiers' ability to carry out instructions, interact with co-workers, and withstand daily stress was moderately impaired.  Dr. Roach further concluded that Stiers' ability to perform simple repetitive tasks was markedly impaired, and that in his medical opinion, Stiers met the criteria for disability.  Dr. Luft confirmed his diagnosis of conversion disorder, and opined that Stiers was not capable of "maintaining any meaningful gainful employment."

On January 4, 2007, the BPAC Committee considered Stiers' appeal.  It reviewed the new materials provided by Stiers, and the documentation already on the record.  The Committee found that neither Dr. Roach's opinion, nor Dr. Lufts', were necessarily inconsistent with the earlier opinion of Dr. Clary upon which the initial denial of LTD benefits had been based.  Accordingly, on January 25, 2007, the Committee notified Stiers that it was upholding the denial of his LTD benefits.

### B.  Procedural History

On February 23, 2007, Stiers filed this complaint against the Defendant.  On September 21, 2007, both parties filed motions for judgment on the administrative record.

### III.  STANDARD OF REVIEW

District courts review a plan administrator's denial of ERISA benefits *de novo*, unless as is the case here, the benefit plan gives the administrator discretionary authority to determine

eligibility for benefits or to construe the terms of the plan.[2]  *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 613 (6th Cir. 1998) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  When such discretion exists, courts review a plan administrator's decision to terminate benefits using the highly deferential arbitrary and capricious standard of review.  *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996).  "This standard 'is the least demanding form of judicial review of administrative action . . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.' " *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (quoting *Perry v. United Food & Workers Dist. Unions 445 & 442*, 64 F.3d 238, 241 (6th Cir. 1995)).   This deferential standard, however, is not a simple formality: "the arbitrary and capricious standard . . . does not require [the Court] merely to rubber stamp the administrator's decision."  *Jones v. Metropolitan Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004).  Instead, a plan administrator's decision will only be "upheld if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence."  *Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir.1991).  This requires the reviewing court to weigh "the quality and quantity of the medical evidence and the opinions on both sides of the issues."  *McDonald v. Western Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2006).

---

[2] The Plan in this case explicitly provides BPAC with complete discretionary authority:

> "Interpreting the provisions of the Plan, including the publication of rules for the regulation of the Plan, as it in its sole, absolute and uncontrolled discretion are deemed necessary or advisable and which are not inconsistent with the express terms thereof or ERISA."

One further element of the arbitrary and capricious standard of review, relevant to this action in particular, is that an actual conflict of interest exists where the entity adjudicating the claim is also the entity responsible for paying the benefits. *Killian v. Healthsources Provident Administrators, Inc.*, 152 F.3d 514, 521 (6th Cir. 1998). This conflict does not, however, alter the standard of review. Instead, it becomes another factor in analyzing whether the plan administrator's decision was arbitrary and capricious. *See Firestone Tire & Rubber*, 489 U.S. at 115.

## IV.  ANALYSIS

### A.  Denial of LTD Benefits

In Plaintiff's Motion for Judgment on the Administrative record, he makes two principle arguments: (1) Dr. Luft and Dr. Roach did indeed conclude that Stiers was disabled and unable to work; and (2) it was unreasonable for the Defendant to rely on the opinion of Dr. Clary. Plaintiff stakes his claim on the argument that Defendant did not provide a reasoned explanation for its denial of LTD benefits. Specifically, Plaintiff takes issue with the January 27, 2007, letter from BPAC stating that, "[n]either Dr. Luft nor Dr. Roach provided additional diagnosis or information differing from those originally presented in the opinion of Dr. Clary. The Committee found the additional opinions of Dr. Luft and Dr. Roach to be inconclusive and not inconsistent with Dr. Clary's report." Plaintiff argues that this is not a reasoned explanation, particularly because it was improper for Defendant to rely on Dr. Clary's opinion in the first place.

Plaintiff's argument with respect to Dr. Luft and Dr. Roach is well-taken. Contrary to the explanation in BPAC's denial letter, both doctors explicitly opined that Stiers met the criteria for

disability.  Dr. Luft wrote a letter supporting Stiers' appeal on November 15, 2006, whereby he plainly stated that in his medical opinion Stiers was incapable of maintaining any meaningful gainful employment due to his severe conversion disorder.  Dr. Roach, in his psychological report of Stiers dated November 1, 2006, detailed a number of impairments that would impact Stiers' ability to complete work-related tasks, and succinctly concluded that Stiers "meets the criteria for disability."  Thus, there is no question that these conclusions directly contradict Dr. Clary's opinion that Stiers was not suffering from work prohibitive conditions.

Plaintiff also asserts that it was plainly unreasonable for Defendant to rely on Dr. Clary's medical opinion.  Plaintiff argues that Dr. Clary's ultimate opinion contradicted the results of the DSM-IV exam he administered to Stiers, and that the video surveillance of Stiers was a year old by the time Dr. Clary reviewed it.  Plaintiff cites the fact that the DSM IV examination data did not indicate that Stiers was intentionally producing his symptoms, and yet Dr. Clary reached the opposite conclusion that Stiers was exaggerating his symptoms.  Plaintiff does not, however, cite to any case law discussing the value of medical opinions that conflict with objective test data, but instead rests upon the normative argument that this sort of conflict should result in discrediting the medical opinion at issue.

Defendant's response to Plaintiff's primary arguments is that the BPAC Committee's reliance on Dr. Clary's medical opinion was reasonable.  Defendant points out that Dr. Clary did not simply rely on one factor in reaching his conclusion, but rather he conducted his own face-to-face psychological assessment of Stiers, administered the DSM IV exam, reviewed the surveillance video, and reviewed Stiers' entire medical file.  Using what he learned from this comprehensive review, Dr. Clary reached the medical opinion that Stiers was not disabled.

Further, citing Sixth Circuit precedent, Defendant argues that it is not arbitrary and capricious for a plan administrator to choose the opinion of one doctor over another. *See Evans v. Unumprovident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) (holding that "[g]enerally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision" (quoting *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003))). Accordingly, Defendant asserts that its choice to credit Dr. Clary over Dr. Roach, or Stiers' treating physicians was not unreasonable.[3]

Defendant's arguments are well-taken. The issue before the Court is not whether there are doctors who concluded that Stiers was disabled, or whether it was possible for Dr. Clary to reach a different conclusion from the information before him, but instead the Court must only determine whether the Defendant's decision to rely on Dr. Clary was reasonable. While Plaintiff has raised doubts as to the implications of a few of the factors relied upon by Dr. Clary in his medical assessment, Plaintiff has failed to demonstrate that Dr. Clary's opinion was so clearly incorrect as to make the Defendant's reliance on Dr. Clary arbitrary and capricious. Further, Plaintiff's naked assertion in the complaint that Dr. Clary is biased in favor of BPAC because he so frequently sides with BPAC in disability determinations that it would cause a "reasonable

---

[3]Unlike the mandatory deference to treating physicians required in Social Security cases, the "Treating Physician Rule" is inapplicable in ERISA cases. The Supreme Court has held that plan administrator's are not required to accord special weight to treating physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003).

-9-

person to believe that the diagnosis is biased," is not supported by any evidence on the record. There is simply no basis, on this record, to find that the Defendant's reliance on Dr. Clary's medical conclusions was an unreasoned decision.[4]

### B. Full and Fair Hearing on Appeal

Although it is not raised in the complaint, nor the briefing, the Court is obligated to examine whether Defendant provided Stiers with a full and fair hearing on appeal as required by Department of Labor regulation 29 C.F.R. § 2560.503-1(h)(4). Section 2560.503-1(h)(4) states that a plan providing disability benefits will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures comply with § 2560.503-1(h)(3)(v), among others. Section (h)(3)(v) states:

> [T]he health care professional engaged for purposes of a consultation under paragraph (h)(3)(iii) of this section shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of appeal, nor the subordinate of any such individual.

The Court finds that Defendant's reliance on Dr. Clary's opinion, both initially and on appeal, violates section 2560.503-1(h)(3)(v). Defendant could counter that it complied with § 2560.503-1(h)(3)(v) because it consulted with multiple health care professionals before it rejected Stiers' application for benefits, and that it was actually Dr. Rutan who reached the initial conclusion that Stiers did not qualify. The initial rejection letter, however, makes it clear that

---

[4]The parties also argue extensively regarding the appropriate value that should be given to Dr. Greenwald's examination methods and medical conclusions, however, the Court need not delve in to this issue because Defendant's reliance on Dr. Clary's comprehensive assessment was sufficient in and of itself to survive the arbitrary and capricious standard of review.

Dr. Rutan's decision was based on Dr. Clary's conclusions, and the BPAC Committee explained the denial on appeal as being the result of no new information being provided to contradict Dr. Clary's report.  Therefore, the Court finds that the Defendant improperly relied on Dr. Clary during the appeal, in violation of 29 C.F.R. § 2560.503-1(h)(4).

### C. Remedy

District courts "must have considerable discretion to craft a remedy after finding a mistake in the denial of benefits." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006) (internal quotation marks and citation omitted).  The Sixth Circuit has adopted the First Circuit's rule that "where the 'problem is with the integrity of [the plan's] decision-making process,' rather than 'that [a claimant] was denied benefits to which he was clearly entitled,' the appropriate remedy generally is remand to the plan administrator." *Id.* (quoting *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 31 (1st Cir. 2005).  Accordingly, this case shall be remanded to the plan administrator.

### V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the administrative record is **DENIED** and Defendant's motion is **GRANTED.**  This case is hereby **REMANDED** to the Defendant's plan administrator, who shall provide Plaintiff with a full and fair hearing on appeal, in accordance with 29 C.F.R. § 2560.503-1(h)(4) and the terms of this opinion.

**IT IS SO ORDERED.**

    s/Algenon L. Marbley  
**ALGENON L. MARBLEY**  
**United States District Court Judge**

**DATED: April 30, 2008**